UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BHC DEVELOPMENT, LC, et al.,

        Plaintiffs,

v.                                    Case No. 12-2393-JPO

BALLY GAMING, INC.,

        Defendant.

## ORDER

    This case involves a contractual dispute arising from the sale of casino management hardware and software by defendant, Bally Gaming, Inc. ("Bally"), to plaintiffs, BHC Development, LC and BHCMC, LLC—the developers and operators of Boot Hill Casino & Resort in Dodge City, Kansas. Plaintiffs filed suit against defendant asserting claims for breach of contract, negligent misrepresentation, and breach of implied warranty of merchantability.[1] Defendant counterclaimed that plaintiffs failed to make payments due under the purchase agreement and continued to use the software after their license expired. Trial is scheduled to begin March 3, 2014. The matter is currently before the undersigned U.S. Magistrate Judge, James P. O'Hara, on several motions: defendant's motion to strike expert and expert report of Bart A. Lewin **(ECF doc. 86);**

---

[1] Plaintiffs also brought claims for fraudulent inducement and breach of express warranty but defendant was granted summary judgment on those claims (*See* ECF doc. 152).

plaintiffs' motion to exclude expert testimony and report of Patrick Crawford **(ECF doc. 118);** and plaintiffs' motion in limine **(ECF doc. 136)**.

## I.     Motions to Exclude Experts

Rule 702 of the Federal Rules of Evidence governs the admissibility of opinions based on scientific, technical, or specialized knowledge.  Under Rule 702, a witness who is qualified by knowledge, skill, experience, training, or education (called an "expert witness") may testify in the form of an opinion or otherwise as to scientific, technical, or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, "if, (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[2]  A district court has wide discretion in deciding whether to admit expert testimony.[3]

The court employs a two-step analysis to determine the admissibility of an expert's opinion.  First, the court must determine whether the expert's proposed testimony has "a reliable basis in the knowledge and experience of his discipline."[4]  The court must then inquire into whether the proposed testimony is sufficiently "relevant to

---

[2] Fed. R. Evid. 702.

[3] *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (citing *Orth v. Emerson Elec. Co., White-Rodgers Div.*, 980 F.2d 632, 637 (10th Cir. 1992)).

[4] *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1238 (D. Kan. 2010) (citing *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)).

the task at hand."[5]  An expert opinion "must be based on facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation … absolute certainty is not required."[6]

A.    **Defendant's Motion to Strike Expert Bart A. Lewin**

Plaintiffs have identified Bart Lewin as their expert to opine on whether the software defendant sold: (1) was delivered in good working order; (2) included all necessary functions to comply with the Kansas Expanded Lottery Act and Kansas Administrative Regulations, plaintiffs' contract with the Kansas Lottery, and plaintiffs' internal controls; (3) included all necessary functions to conduct marketing operations; (4) contained all functions on the Functionality Spreadsheet; and (5) met the minimum standard of merchantability for similar products.[7]  Defendant moves the court to exclude Mr. Lewin's opinion because: (1) it is not based on sufficient facts and data; and (2) it fails to meet the reliability test under *Daubert*.

1.    **Sufficient Facts or Data**

Defendant argues Mr. Lewin's insufficient knowledge of the Bally software or its operation render his opinions suspect.[8]   First, defendant asserts that Mr. Lewin's

---

[5] *Daubert*, 509 U.S. at 597.

[6] *Belisle*, 697 F. Supp. 2d at 1238 (quoting *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003)).

[7] ECF doc. 86-1 at 4.

[8] ECF doc. 86 at 5.

qualifications combined with his deposition testimony show he had insufficient knowledge about the system or how it was operated at the Boot Hill Casino. Defendant emphasizes the fact that Mr. Lewin could not testify with certainty about whether there was related hardware or third-party systems plaintiffs were required to purchase under the agreement. Because Mr. Lewin testified that he did not inquire about Boot Hill Casino's information technology ("IT") department, defendant also claims Mr. Lewin lacks familiarity with how the system operated at the casino.

Plaintiffs respond that there is no question Mr. Lewin is qualified to opine on casino management software, including defendant's systems software. Mr. Lewin was the Chief Technology Officer of a multinational casino operator, where he oversaw an IT department that operated Bally's software. Mr. Lewin has written over twenty articles that have been published in gaming industry trade magazines. In addition, he has operated the same Bally software used by plaintiffs and developed software that interfaces with it. Finally, Mr. Lewin has served as an industry consultant, advising casinos on how to make effective use of the same Bally software at issue here.

Plaintiffs also respond that Mr. Lewin's failure to consider hardware or third-party systems as alternative explanations for their software problems goes to the weight and not the admissibility of his opinions. Mr. Lewin's assumption that plaintiffs used third-party systems was based on his professional experience that use of such systems is necessary for any casino operating progressive slot machines. Similarly, plaintiffs assert that Mr. Lewin's failure to investigate the IT department is an alternative explanation that goes to

the weight and not the admissibility of his opinions. Regardless, plaintiffs point out that Mr. Lewin observed notes within defendant's issue logs that suggest it is very unlikely certain issues were related to inadequate training.

"The Tenth Circuit employs a quantitative, rather than a qualitative analysis when examining the sufficiency of the facts and data used by the witness."[9] Mr. Lewin reviewed over fifty issue logs authored by defendant's employees to track the casino's complaints as well as numerous other documents. Since defendant does not challenge the accuracy of information written by its own employees, plaintiffs insist that Mr. Lewin's opinions are based on sufficient facts and data and should not be excluded.

Mr. Lewin's background includes twenty-five years of experience in the gaming industry in which he performed jobs as a chief technology officer, director of software development, chief executive officer of a gaming industry software supplier, and an industry consultant to casinos regarding Bally software. He has experience developing and operating casino management software. Specifically, he has experience working with defendant's software. As earlier indicated, he also has written over twenty articles that have been published in gaming trade magazines.

Mr. Lewin's report indicates that he intends to testify on the performance of defendant's software. The court has no doubt Mr. Lewin is able to opine on the

---

[9] *McDaniel-Sharp v. Wal-Mart Stores, Inc.*, No. 11-2518, 2012 WL 4210511, at *3 (D. Kan. Sept. 18, 2012) (citing *United States v. Lauder*, 409 F.3d 1254, 1264 n.5 (10th Cir. 2005); Fed. R. Evid. 702, Advisory Committee's Note to the 2000 Amendments).

performance of defendant's casino management software based on his background and extensive experience. Therefore, to the extent defendant moves to exclude Mr. Lewin's testimony on the basis of his qualifications, the court denies its motion.

Moreover, the court agees with plaintiffs that Mr. Lewin's admission that he failed to investigate the IT department or consider the hardware or third-party systems as alternative explanations for the software's performance goes to the weight and not the admissibility of Mr. Lewin's opinions.[10] Mr. Lewin's failure to rule out all possible alternative causes of the software's performance does not render his opinions inadmissible. Defendant may challenge Mr. Lewin's opinions via "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof …. the tradition and appropriate means of attacking shaky but admissible evidence."[11] The rejection of expert testimony is the exception rather than the rule.[12] Here, plaintiffs have met their burden to show Mr. Lewin's opinion is based on sufficient facts or data. Therefore, defendant's request to strike Mr. Lewin's opinion on this basis is denied.

---

[10] *See McDonald v. N. Am. Specialty Ins. Co.*, 224 F. App'x 747, 767 (10th Cir. 2007); *see also Goebel v. Denver and Rio Grande Western R.R. Co.*, 346 F.3d 987, 998-99 (10th Cir. 2003) (indicating that an expert's failure to rule out all possible alternative causal sources does not render the expert's testimony inadmissible).

[11] *Daubert*, 509 U.S. at 596.

[12] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-MD-1468, 2008 WL 4382141, at *1 (D. Kan. Sept. 26, 2008) (*See* Fed. R. Evid. 702 Advisory Committee notes).

## 2.    Reliability Test of *Daubert*

Mr. Lewin opined that defendant's systems software was not delivered to plaintiffs in "good working order" and that defendant never fully repaired or restored the software to "good working order."[13]  Defendant argues that Mr. Lewin's testimony and report fail to meet *Daubert's* reliability test because Mr. Lewin is "insufficiently familiar with the Bally software and his standard of 'good working order' has no definition or basis in the computer software industry."[14]  Specifically, defendant argues that Mr. Lewin's testimony is nothing more than a subjective, personal opinion that the software was not in "good working order."  Defendant asserts that "good working order" is a vague term, which Mr. Lewin could not articulate as an industry standard.

Plaintiffs respond that Mr. Lewin's explanation of his opinion is substantiated by evidence and thus is sufficiently reliable to be admitted under *Daubert* and Rule 702. First, plaintiffs assert that Mr. Lewin did articulate a basis for his conclusion that defendant's systems software was not in good working order— a basis supported both by evidence in the record and Mr. Lewin's professional experience.  Mr. Lewin stated in his report that he would consider casino management software to be in good working order if it performs as the vendor represents during the sales process and in accordance with the terms outlined in the sales contract.  Additionally, Mr. Lewin testified that to be in good

---

[13] ECF doc. 86-1 at 4.

[14] ECF doc. 86 at 9.

working order, the software should be able to comply with the regulations of the casino's jurisdiction and its own internal controls. Finally, Mr. Lewin stated that most people in the gaming software industry would apply the same, or a very similar definition.

Second, plaintiffs assert that Mr. Lewin reached his conclusion by reviewing defendant's issue logs in light of applicable state regulations, the casino's internal controls, and representations made by defendant to plaintiffs prior to the purchase of the software. Plaintiffs assert Mr. Lewin's analysis of the evidence was based on his extensive professional experience, which allowed him to apply his definition of "good working order" to the facts of this case. Plaintiffs state that any further dispute with the definition of "good working order" goes to the weight and not the admissibility of Mr. Lewin's opinion. Therefore, plaintiffs argue, Mr. Lewin's report is sufficiently reliable and should be admitted.

Reliability analysis applies to all aspects of the expert's testimony, including the facts underlying the opinion, the methodology, and the link between the facts and the conclusion drawn.[15] Consequently, the court must make a practical, flexible analysis of the reliability of the testimony, considering relevant factors and the circumstances of the case.[16] The court has discretion on how to approach the task of making reliability

---

[15] *Parker v. Wal-Mart Stores, Inc.*, 267 F.R.D. 373, 375 (D. Kan. 2010) (citing *Starling v. Union Pac. R. Co.*, 203 F.R.D. 468, 475 (D. Kan. 2001)).

[16] *Id.*

findings.[17]  Although the rejection of expert testimony is the exception rather than the rule,[18] the court will not allow expert testimony that invades the province of the jury or renders opinions on issues of law.[19]

The court already has determined that Mr. Lewin is qualified to opine on the performance of defendant's software and that his opinion is based on sufficient facts and data.  Now the court must decide if Mr. Lewin's opinion is sufficiently reliable.

Mr. Lewin relied upon his professional experience working with, implementing, and operating casino management software within the gaming industry, along with his familiarity and experience with defendant's software to determine that the software was not delivered to plaintiffs in "good working order."  Mr. Lewin also based his opinion on his review of the agreement at issue, Kansas state regulations, the casino's internal controls, and issue logs authored by defendant's employees, which track the casino's complaints with the software.  Mr. Lewin explained his basis or methodology for determining if casino management software was in good working order and, as earlier indicated, stated that most people in the software industry would apply the same, or a very similar definition.

Based on the foregoing, the court finds that Mr. Lewin's opinion does have a reliable basis in the knowledge and experience of his discipline.  Plaintiffs need not show

---

[17] *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

[18] *Id.* (citing *Daubert*, 509 U.S. at 595).

[19] *Id.* (citing *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988)).

that Mr. Lewin is indisputably correct. Plaintiffs have shown that Mr. Lewin's opinion is based on facts which sufficiently satisfy Rule 702's reliability requirement. Defendant will have an opportunity to challenge any issues it has with Mr. Lewin's opinion through cross-examination or contrary evidence.

For the first time, defendant challenges the relevancy of Mr. Lewin's opinion in the final paragraph of its reply brief. Defendant asserts that its liability is limited by the warranties and disclaimers provided in the agreement with plaintiffs. Therefore, defendant argues, whether the software was in "good working order" will have no relevance to the validity of the disclaimers or breach of the express warranty. Courts in this district generally refuse to consider issues raised for the first time in a reply brief.[20] At this time and based on the information currently before it, the court finds that Mr. Lewin's opinion will assist the trier of fact and is relevant to the "task at hand."[21] Therefore, defendant's motion to strike the expert testimony and report of Mr. Lewin is denied.

### B.    Plaintiffs' Motion to Exclude Expert Patrick Crawford's Testimony

Plaintiffs contend the testimony of Patrick Crawford, defendant's expert regarding the functionality of defendant's software, is inadmissible under *Daubert*,[22] because it is

---

[20] *Lieuau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001).

[21] *See* ECF doc. 103 at 5 (citing *Heartland Surgical Specialty Hosp. LLC v. Midwest Div. Inc.*, No. 05-2164, 2007 WL 6215929, at *1 (D. Kan. Dec. 19, 2007)).

[22] 509 U.S. at 589.

not based on sufficient facts or data to render it reliable.

Defendant argues that plaintiffs' motion must be denied as untimely. The pretrial order states that all motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-05, *Daubert*, or similar case law, must be filed by twenty-eight days before trial unless the motion will be case-dispositive, or if an evidentiary hearing on the motion is reasonably anticipated.[23] The instant motion was filed on November 11, 2013, as of that time, trial was set to begin on December 9, 2013, before the presiding U.S. District Judge, Kathryn H. Vratil. Trial is now scheduled to begin before the undersigned magistrate judge on March 3, 2014. Defendant did not ask for an evidentiary hearing and the court has concluded that one is not necessary. Further, plaintiffs' motion is not case-dispositive. Therefore, defendant's request to deny plaintiffs' motion as untimely is denied.

Defendant has identified Patrick Crawford as its expert to opine on whether the software sold to plaintiffs was : (1) functional; (2) in compliance with Kansas Racing and Gaming Commission standards; and (3) consistent in function to the rest of the industry.[24] Plaintiffs move the court to exclude Mr. Crawford's opinion because he failed to consider sufficient facts and data to render his report reliable. As noted earlier, the Tenth Circuit

---

[23] ECF doc. 92 at 27.

[24] ECF doc. 119-1 at 2.

employs a quantitative, rather than qualitative analysis when examining the sufficiency of the facts and data used by the witness.[25]

Plaintiffs assert that Mr. Crawford considered only seven documents before reaching his conclusions: a compilation of the Boot Hill Casino & Resort's monthly revenue figures, a single Bally issue log, and five certification documents issued by Gaming Laboratories International ("GLI"). Additionally, plaintiffs emphasize that Mr. Crawford did not compensate for his lack of documentary support by conducting an independent investigation. Instead, he spoke only to one of defendant's executives and defense counsel.

Further, plaintiffs contend that the factors on which Mr. Crawford bases his opinions are plainly contradicted by evidence in the record. For example, plaintiffs argue that Mr. Crawford lists sixteen "critical modules" which were not related to issues reported on the single issue log that he examined, and cites this as evidence that defendant's software was functioning properly. Plaintiffs argue this is incorrect because the issue logs have items relating to two of the critical modules that Mr. Crawford identified. Plaintiffs argue this discrepancy alone is enough to exclude Mr. Crawford's testimony.

Defendant responds that Mr. Crawford's extensive experience in the development of gaming management systems has provided him with the knowledge that casinos would

_____

[25] *McDaniel-Sharp*, 2012 WL 4210511, at *3 (citing *Lauder*, 409 F.3d at 1264 n.5; Fed. R. Evid. 702, Advisory Committee's Note to the 2000 Amendments).

not be able to operate without critical "system modules" performing. Mr. Crawford opined that there "was an obvious absence of critical items" on the latest "issues list."[26] Therefore, Mr. Crawford's analysis of this information combined with his seventeen years of experience in the casino industry led him to conclude the software was functioning properly.

Defendant also responds that Mr. Crawford's opinion rests on sufficient foundation to withstand exclusion. Defendant asserts that plaintiffs' argument is based solely upon Bart Lewin's rebuttal report. Given the fact that Mr. Crawford reviewed Mr. Lewin's report and file, defendant responds that if Mr. Crawford failed to review sufficient documents, then so did plaintiffs' expert, Mr. Lewin.

Plaintiffs respond that defendant's contention conflicts with Mr. Crawford's statement in his report that "[a]ll documents" he used in creating his report are included in Appendix B, as Appendix B contains only seven documents. However, plaintiffs concede that Mr. Crawford stated in his report that he "reviewed the report prepared by Mr. Lewin," which is not included in Appendix B but was reviewed by Mr. Crawford nonetheless. Regardless, plaintiffs argue that Mr. Crawford makes no references to any of the hundred-plus documents considered by Mr. Lewin and his rebuttal contains only two conclusory statements.

---

[26] ECF doc. 119-1 at 2.

To clarify, Mr. Crawford's report states that he has "used various documents provided by Bally's counsel, as well as documents found in the public realm." This statement is *then* followed by the following sentence, "All documents are attached as Appendix B: Supporting Documentation." Without taking the foregoing sentence out of context and reading Mr. Crawford's report in its totality, it appears that Mr. Crawford has read and taken into account the report and file of Bart Lewin in forming his opinion.

After reviewing Mr. Crawford's opinions, the court finds those opinions rest on facts which enable him to express reasonably accurate conclusions. Mr. Crawford appears to have reviewed everything that plaintiffs' expert reviewed along with the documents included in Appendix B to his report and simply reached a different conclusion than plaintiffs' expert. The fact that experts may have differing opinions does not warrant exclusion.[27] Plaintiffs try to dismiss Mr. Crawford's experience as irrelevant. However, an expert's qualifications are relevant to the inquiry as to whether an expert's opinion is based on facts that enable him to express a reasonably accurate conclusion.[28] If plaintiffs take issue with Mr. Crawford's' qualifications or the accuracy of his findings, they may address these issues through vigorous cross-examination or through the presentation of contrary evidence to show any weakness in Mr. Crawford's conclusions.

---

[27] *Belisle*, 697 F. Supp. 2d at 1242 (*See Daubert*, 509 U.S. at 595 (stating the court's analysis is on the methodology and principles an expert used, not the conclusions generated)).

[28] *Id.* (citing *In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, 2009 WL 3756980, at *6 (D. Kan. Nov. 9, 2009) (citations omitted)).

Plaintiffs make a brief reference to the inadmissibility of the methodology used by Mr. Crawford in the final paragraph of their reply brief but fail to provide any support for this argument. Upon review, the court finds no issue with Mr. Crawford's methodology and finds that plaintiffs' argument goes to the weight and not the admissibility of the evidence. Any of plaintiffs' remaining concerns regarding the information Mr. Crawford considered (or failed to consider) to form his opinion may be addressed on cross-examination at trial. In consideration of the foregoing, plaintiffs' motion to exclude expert testimony and report of Mr. Crawford is denied.

## II. Plaintiffs' Motion in Limine

Plaintiffs' motion in limine seeks to exclude the following evidence from trial: (1) evidence relating to allegations that plaintiffs did not pay GHI Solutions, Inc. ("GHI"); (2) evidence relating to plaintiffs' temporary withholding of payments to defendant for gaming machines; and (3) evidence relating to plaintiffs' initial damage disclosures. Defendant opposes plaintiffs' motion on all three grounds. Plaintiffs did not file a reply brief. For the reasons explained below, plaintiffs' motion is granted in part and denied in part.

In deciding motions in limine, the court applies the following standard:

The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. The court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded. At trial, the court may alter its limine ruling based on developments at trial or on its sound judicial discretion. Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial only means that the court cannot

decide admissibility outside the context of trial. A ruling in limine does not relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial.[29]

## A.    Evidence Regarding Payments Owed to GHI

Plaintiffs object to the admission of evidence that plaintiffs did not pay GHI in full. Plaintiffs hired GHI to help them select a casino management software system. Because GHI is not a party to this litigation and the amount plaintiffs paid GHI is not an element of either party's damages claim, plaintiffs argue such evidence is irrelevant, unduly prejudicial, and improper character evidence.

Specifically, plaintiffs argue evidence of their withheld payment to a non-party is barred by Federal Rules of Evidence 401, 403, and 404(b)(1). Under Fed. R. Evid. 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." As to prejudice, Fed. R. Evid. 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Finally, Fed. R. Evid. 404(b) provides, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the

---

[29] *Schipper v. BNSF Ry. Co.*, No. 07-2249, 2009 WL 997149, at *1 (D. Kan. Apr. 14, 2009) (quoting *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000)).

person acted in accordance with the character." However, this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.[30]

Defendant responds that any evidence regarding plaintiffs' dealings with GHI would not be offered for the purpose of proving plaintiffs' character. However, defendant argues that such evidence is relevant to the jury to determine plaintiffs' course of dealings with defendant. Defendant has a counterclaim that plaintiffs failed to make payments due under the purchase agreement and continued to use the software after their license expired. Defendant asserts that evidence of plaintiffs' withheld payment under a contract with GHI would give the jury a basis for making an inference regarding its counterclaim.

Federal Rule of Evidence 404 bars using evidence of a specific instance of conduct to show a party had a propensity to act in conformity therewith. On one hand, defendant claims it is not using evidence of plaintiffs' alleged withheld payment to a non-party "for the purpose of proving plaintiffs' character, or that plaintiffs acted in conformance with that character."[31] Yet, in the next breath defendant asserts that this evidence would allow the jury to *infer* plaintiffs failed to make payment to defendant. This type of character evidence is susceptible of being used for the purpose of suggesting

---

[30] Fed. R. Evid. 404(b)(2).

[31] ECF doc. 148 at 3.

an *inference* that a person acted on the occasion in question consistently with his character. Plaintiffs' alleged failure to pay a *non-party* for services completely unrelated to the contract in dispute has slight probative value to the issues in this case and may be very prejudicial.[32] Such evidence would only distract the trier of fact from what occurred between plaintiffs and defendant. None of the exceptions to Rule 404 appear to apply and defendant fails to cite any. Therefore, defendant is barred from presenting evidence that plaintiffs withheld payment to GHI. Plaintiffs' motion in limine is granted as to this issue.

### B. Evidence Relating to Plaintiffs' Withholding of Payment to Defendant

Similarly, plaintiffs move to prohibit defendant from offering evidence that plaintiffs "briefly withheld from Bally certain payments for electronic gaming machines."[33] Plaintiffs do not dispute that they withheld payment. However, plaintiffs assert the contract that governed the purchase and payments of the gaming machines is different and separate from the agreement that is central to this case. Plaintiffs argue that, similar to evidence of their withheld payment to GHI, this evidence should not be allowed because it is irrelevant, unduly prejudicial, and improper character evidence.

---

[32] *See Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1194 (10th Cir. 1997) (defendant's alleged breach of its contract with non-party would not be admissible to prove that defendant breached contracts, and therefore, that defendant breached its contract with plaintiff).

[33] ECF doc. 137 at 4.

Defendant responds that any non-payment by plaintiffs to defendant for its products and services is highly relevant to its counterclaim. In contrast to plaintiffs' assertion, defendant insists that the contract regarding the gaming machines and the agreement at issue should be considered in their entirety by the trier of fact.

This evidence is distinguishable from plaintiffs' non-payment to GHI because it involves a related contract to the agreement at issue, the same facts, and a contract actually between the parties. This evidence could be relevant to the issue of motive, intent, or plan—exceptions to Rule 404(b).[34] Although the probative value is not great because plaintiffs' motive is not at issue for a breach of contract claim, the court is not convinced that this evidence should not come in under an exception to Rule 404(b)(2).[35]

Additionally, under the Rule 401 relevancy standard, the court finds this evidence could shed light on facts material to the outcome of this litigation. Plaintiffs have failed to meet their burden of showing the evidence should be excluded as irrelevant, at least prior to trial. The court will save for trial any ruling on objections based on asserted prejudice to plaintiffs. In the court's experience, any potential prejudice can often be

---

[34] Fed. R. Evid. 404(b)(2) allows evidence of other acts to be admitted for purposes other than action in conformity therewith, such as proof of "motive, opportunity, intent, preparation, plan, knowledge [or] identity…."

[35] *See Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1056-57 (10th Cir. 1988) (in claim of promissory estoppel for failure to loan money, evidence of similar unfulfilled promises held admissible under Rule 404(b)).

cured by giving the jury an instruction limiting the use for which the evidence may be considered.

### C.     Evidence of Initial Damage Disclosures

Plaintiffs move the court to exclude reference to plaintiffs' computation of damages set out in their initial disclosures.  Fed. R. Civ. P. 26(a)(1)(A)(iii) required plaintiffs to provide a computation of each category of damages they claimed.  Plaintiffs' initial computation of damages is relevant to the issue of damages the jury must decide. Plaintiffs have cited no authority for the proposition that such damage computations should be barred from admission at trial.   Therefore, this request is denied.

In consideration of the foregoing,

1.     Defendant's motion to strike expert and expert report of Bart A. Lewin **(ECF doc. 86)** is denied.

2.     Plaintiffs' motion to exclude expert testimony and report of Patrick Crawford **(ECF doc. 118)** is denied.

3.      Plaintiffs' motion in limine **(ECF doc. 136)** is granted in part and denied in part.

IT IS SO ORDERED.

Dated February 10, 2014, at Kansas City, Kansas.

_s/ James P. O'Hara_____
James P. O'Hara
U. S. Magistrate Judge