UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BHC DEVELOPMENT, L.C. and
BHCMC, L.L.C.,

                Plaintiffs,

v.                                                Case No. 12-2393-JPO

BALLY GAMING, INC.,

                Defendant.

## MEMORANDUM AND ORDER

This case arises out of a contract for the sale of more than a million dollars in specialized software, related hardware, and services by the defendant, Bally Gaming, Inc., to the plaintiffs, BHC Development, L.C. and BHCMC, L.L.C., for use in managing the Boot Hill Casino and Resort in Dodge City, Kansas. A few months before trial, U.S. District Judge Kathryn H. Vratil granted defendant summary judgment on plaintiffs' claims of fraudulent inducement and breach of express warranty, but ruled plaintiffs could proceed on their alternatively pleaded claims of negligent misrepresentation, breach of contract, and breach of implied warranty of merchantability.[1] The parties later consented to trial being presided over by the undersigned U.S. Magistrate Judge, James P. O'Hara.[2] Just before jury selection, prompted by defendant's motion to force an

---

[1] ECF doc. 152.

[2] ECF doc. 163.

election of remedies,[3] plaintiffs announced they would proceed at trial only on their negligent misrepresentation claim, i.e., plaintiffs abandoned their breach of contract and implied warranty claims. Trial thus was confined to the negligent misrepresentation claim and defendant's counterclaim for $441,560.90 in goods and services that had been billed to but admittedly not paid by plaintiffs. At the close of all the evidence during five days of trial, defendant moved for judgment as a matter of law. The court denied the motion. Later that same day, the jury returned a verdict in favor of plaintiffs for $1,423,542.27 on the negligent misrepresentation claim, and against defendant on the counterclaim.[4] The court entered judgment accordingly.[5] Defendant has filed a renewed motion for judgment as a matter of law[6] and a motion to stay execution of judgment.[7]

I.  **Defendant's Renewed Motion for Judgment as a Matter of Law**

A post-trial motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure is appropriate only if the evidence, viewed in light most favorable to the nonmoving party, "points but one way and is susceptible to no

---

[3] See ECF docs. 175, 176, and 179-81.

[4] ECF doc. 194.

[5] ECF doc. 197.

[6] ECF doc. 201.

[7] ECF doc. 199.

reasonable inferences supporting the party opposing the motion."[8] Such motions should be "cautiously and sparingly granted."[9] In determining whether judgment as a matter of law is proper, the court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury.[10] Rather, the court must affirm the jury verdict if, viewing the record in a light most favorable to the nonmoving party, it contains evidence upon which the jury could have properly returned a verdict for the nonmoving party.[11] Conversely, though, the court must enter judgment as a matter of law for the movant if "'there is no legally sufficient evidentiary basis … with respect to a claim or defense … under the controlling law.'"[12]

Defendant contends that it's entitled to judgment as a matter of law on plaintiffs' negligent misrepresentation claim for two basic reasons: (1) given the uncontroverted facts of this case, most notably, the parties are sophisticated businesses that negotiated and entered into a detailed written contract with advice of counsel, plaintiffs' claim is

---

[8] *Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1293 (10th Cir. 2002) (quoting *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1991)).

[9] *Black v. M & W Gear Co.*, 269 F.3d 1220, 1238 (10th Cir. 2007) (quoting *Neese v. Schuckman*, 98 F.3d 542, 548 (10th Cir. 1996)).

[10] *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2001) (citing *Lockard v. Pizza Hut*, 162 F.3d 1062, 1068 (10th Cir. 1998)).

[11] *Roberts v. Progressive Independence, Inc.*, 183 F.3d 1215, 1219-20 (10th Cir. 1999) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir. 1996)).

[12] *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000) (quoting *Harolds*, 82 F.3d at 1546-47).

barred by the so-called "economic loss doctrine"; and (2) even if the economic loss doctrine does not present an absolute bar, there was insufficient evidence on an essential element of the negligent misrepresentation claim, specifically, that defendant failed to exercise reasonable care or competence and thereby provided false information to plaintiffs. Defendant also asserts that, assuming plaintiffs were entitled to any verdict, the allowable damages on the negligent misrepresentation claim must be capped at $281,135.00 (the amount actually paid by plaintiffs for the software part of the system), as provided in a limitation-of-damages clause in the parties' contract.

### A. Economic Loss Doctrine

Judge Vratil addressed the economic loss doctrine at length in her summary judgment ruling.[13] As she explained, courts are reluctant, subject to a few recognized exceptions, to allow negligent misrepresentation claims (and most other tort-based remedies) where a party seeks to recover purely economic loses in circumstances that otherwise are or should be governed by contract law. Because this case involves a written commercial contract executed at arm's length by sophisticated parties with the advice of counsel, and because no personal injuries or property damage are involved, defendant asserts that the economic loss doctrine should preclude any recovery for negligent misrepresentation. Specifically, defendant argues that plaintiffs' only available

---

[13] ECF doc. 152 at 14-18.

theory of recovery (albeit now abandoned) is for breach of contract, subject of course to the limitation-of-damages clause in the parties' contract.

The economic loss doctrine seems to have gained much traction recently in courts throughout the United States.[14] Hence, it is unsurprising that defendant seeks to rely on the doctrine here. But regardless of whatever trends are developing in other courts, it is imperative to bear in mind that this court's subject matter jurisdiction statutorily is based upon the parties' diversity of citizenship and the amount in controversy.[15] Although federal law controls the procedural question of whether judgment as a matter of law for defendant is appropriate, in diversity cases such as this, the substantive law of the forum state governs the analysis of the underlying claims.[16] The parties agree Kansas law is controlling.[17] And, as explained below, Kansas's highest court very recently held that negligent misrepresentation may be a viable theory of recovery in commercial cases even if there's privity of contract between the parties. As a practical matter, the determinative question is what the Kansas Supreme Court has held about negligent misrepresentation,

---

[14] *See generally* The Honorable Michael M. Baylson, Kelly D. Eckel, & Sandra A. Jeskie, *The Intersection of Contract Law and Tort Principles—Economic Loss Doctrine*, 7 Bus. & Com. Lit. Fed. Cts. § 78:7, American Bar Ass'n (3d ed. rev. Nov. 2013); and Christine Spinella Davis, Daniel Wilson, Scott R. Wolf, Frank P. Tiscione, Van Cates, Michael A. Sirignano, & Michelle A. Bholan, *Recent Developments in Business Litigation*, 49 Tort Trial & Ins. Prac. L.J. 89 (2013).

[15] See Pretrial Order at ¶ 3(a) (ECF doc. 92 at 2) (citing 28 U.S.C. § 1332).

[16] *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1195 (10th Cir. 2012) (citing *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009)).

[17] See Pretrial Order at ¶ 3(d) (ECF doc. 92 at 2).

*not* whether that court's holding is well-reasoned or in accord with the holdings of other state and federal courts—the undersigned magistrate judge will confine himself only to the former and express no views about the latter.

Defendant does grudgingly acknowledge that the Kansas Supreme Court recently held in *Rinehart v. Morton Buildings, Inc.* that negligent misrepresentation claims are not subject to the economic loss doctrine, but defendant proceeds to argue that the rationale for that holding does not apply because the facts in this case are distinguishable.[18] Specifically, defendant emphasizes the fact that unlike in *Rinehart*, there *is* privity of contract between the parties in this case. As earlier indicated, defendant argues that the parties here are sophisticated business entities with no material disparity in bargaining power and that they entered the contract under the guidance and advice of counsel. Defendant asserts that the "narrow" holding in *Rinehart* and the rationale for it does not apply because plaintiffs survived summary judgment on their claims for breach of contract and breach of implied warranty. On this basis, defendant asks that the court apply the economic loss doctrine to bar plaintiffs' negligent misrepresentation claim and grant defendant's renewed motion for judgment as a matter of law.

Plaintiffs respond that the *Rinehart* holding is clear and unambiguous: "negligent misrepresentation claims are not subject to the economic loss doctrine because the duty underlying such claims arises by operation of law and the doctrine's purposes would not

---

[18] ECF doc. 202 at 4 (citing *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 932, 305 P.3d 622 (2013)).

be furthered by extending it to such claims."[19]  Further, plaintiffs argue that the *Rinehart* court did not base its holdings on the particular facts of that case, but on the special nature of the negligent misrepresentation tort.

In *Rinehart*, the Kansas Supreme Court rejected a bright-line rule that would apply the economic loss doctrine to bar all negligent misrepresentation claims where the parties had contractual privity.[20]  Indeed, the Kansas Supreme Court stated that "[i]mportantly, it can be seen that we do not require privity of contract as an element for this cause of action, *nor have we said the existence of contractual privity bars the tort*."[21]

When defendant filed its motion for summary judgment,[22] Judge Vratil carefully analyzed and considered the long line of cases that apply the economic loss doctrine in Kansas, as well as the Kansas Supreme Court's holding in *Rinehart*, and held "the economic loss doctrine does not bar [plaintiffs'] negligent misrepresentation claim."[23]  Therefore, she denied defendant's motion for summary judgment on plaintiffs' negligent misrepresentation claim.  Defendant never sought reconsideration of that decision.

Notably, defendant does not argue that the trial record contains evidence not available on summary judgment—that there was privity of contract and that sophisticated

---

[19] ECF doc. 204 at 13-14 (quoting *Rinehart*, 305 P.3d at 624).

[20] *Rinehart*, 305 P.3d at 632.

[21] *Id.* (emphasis added).

[22] ECF doc. 83.

[23] ECF doc. 152 at 17.

parties entered into the contract with the advice of counsel is not new information. Nor does defendant point to any new court decision issued after the summary judgment ruling. Rather, defendant attempts to re-argue the same points previously made in its motion for summary judgment. Although only final judgments qualify as law of the case,[24] defendant has provided no good reason to persuade the undersigned magistrate judge to change Judge Vratil's previous holding with regard to the economic loss doctrine and *Rinehart's* application to this case. In consideration of the foregoing, defendant's renewed motion for judgment as a matter of law on this issue is respectfully denied.

    **B.**    **Sufficiency of the Evidence**

Mindful the court might decline to apply the economic loss doctrine, defendant argues the verdict of negligent misrepresentation must be set aside because there was insufficient evidence presented that defendant was negligent in its communications with plaintiffs and that the communications were false. Further, defendant asserts that plaintiffs did not present any competent expert testimony to show the information regarding defendant's products and services was inaccurate.

---

[24] *Univ. of Kan. v. Sinks*, 644 F. Supp. 2d 1287, 1299 (D. Kan. 2008) (citing *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1079 (10th Cir. 2001); Fed. R. Civ. P. 54(b) ("any order … that adjudicates fewer than all the claims … may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities.")).

Plaintiffs effectively counter defendant's arguments with the following evidence: Ramesh Srinivasan, defendant's chief executive officer, testified by videotaped deposition that he understood the purpose of the detailed pre-contract request for proposal ("RFP"), submitted by plaintiffs to defendant and other prospective vendors, was to determine whether the various casino computer systems that were available in the market met 644 specified functional requirements for the casino in Dodge City.[25] Mr. Srinivasan also testified that he knew plaintiffs would rely upon defendant's responses to the RFP.[26] Clark Stewart, the chief executive officer of plaintiff BHCMC, L.L.C., testified how and why defendant's representations in response to the RFP were false, and gave several examples in support of his testimony.[27] Two of plaintiffs' on-site managers, Sharon Stroburg and Jessica Rabe, also testified about how defendant's system failed to perform as promised, was chronically rife with bugs, and that defendant's system never did perform properly or reliably despite the continuing efforts of defendant's personnel to fix the bugs.

Several damaging intra-company e-mails written by Mr. Srinivasan were admitted into evidence. He candidly discussed the system's deficiencies, including its inability to

---

[25] ECF doc. 186-1 (Tr. of Mr. Srinivasan's Videotaped Deposition Testimony, at 29:12 – 30:14).

[26] *Id.* at 31:12 – 32:13.

[27] ECF doc. 204, Ex. A (Partial Tr. of Mr. Stewart's Trial testimony, at 46:19 – 49:14 and 51: 8-13).

run multiple promotions at once, mismatched reports, and overall lack of functionality.[28]

For example, on April 2, 2011, Mr. Srinivasan wrote:

> Whoever goes [to Dodge City] needs to make a real attempt to drive home the final solutions of how [plaintiffs] can use CMP [the subject computer system] to meet their needs. I am quite shocked how the [defendant's] Services teams have not done a better job of REALLY working through their issues. It is quite amazing how everyone at Bally love to operate at 30,000 feet and not trouble themselves with working out real solutions for customers.
>
> I did not realize till this meeting that CMP was this weak in so many areas. I am also more than a little surprised how these deficiencies have persisted after all these years of development. Are we all just experts in explaining how CMP works today- or are we really good at improving the product functionality as well? Our objectives during our meeting there should be as much to understand how CMP needs to be improved quickly to remove some of the age-old ridiculously stone age constraints (no expiry date functionality yet? cannot run multiple promotions at the same time? Reports never match?) - as much helping them with work-a rounds so that they can use the current CMP version better. I think one of the reasons why CMP has not moved forward may be because we are too confident about it and have not fully appreciated why it needs to 'grow up/ a bit faster.
>
> One other thing that came out of the meeting is how much Customer Support gives the run-around to customers with their various 'guesses' one after the other ... try this ... Oh did it not work? ... now try this ..... do we really take the solutions we suggest seriously?[29]

In his testimony, Mr. Srinivasan adroitly tried to minimize his e-mails as the product of an "emotional" manager seeking to "motivate" subordinates to perform at a level higher than what is customary in the gaming industry. But the court finds Mr. Srinivasan's own printed words are such that the jury could properly infer that

---

[28] *See, e.g.*, ECF doc. 204, Ex. C at 2.

[29] *Id.*

defendant's top executive essentially had admitted both falsity of defendant's RFP-response and defendant's failure to exercise reasonable care. If that were not enough, Joe Sellens, a former audit enforcement agent for the regulating Kansas Lottery, testified that Mr. Srinivasan admitted to him that the system had "probably been pushed out to market too fast" and "probably needed some more … curing or development testing before it actually had been put on the market."[30]

Of course, "[t]he jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."[31] In order to defeat defendant's motion, plaintiffs must simply point to evidence in the trial record that could persuade a reasonable jury to find for plaintiffs.[32]

Viewing the evidence presented in the light most favorable to plaintiffs, they assert (and the court agrees) that the jury had more than a sufficient basis to conclude defendant's representations were false and that defendant was negligent in its response to plaintiffs' RFP. The jury had sufficient evidence to find in favor of plaintiffs on their negligent misrepresentation claim, and thus the court overrules defendant's renewed motion for judgment as a matter of law on this point.

---

[30] ECF doc. 204 at 24 (citing Ex. E).

[31] *Sinks*, 644 F. Supp. 2d at 1293-94 (citing *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000)).

[32] *Id.* at 1296.

### C. Limitation of Damages

Again being mindful the court might decline to apply the economic loss doctrine, defendant also argues that, under the terms of the parties' contract, plaintiffs' claim for negligent misrepresentation must be limited to $281,135.00, i.e., the amount paid by plaintiffs for the allegedly defective software. The remaining amounts paid by plaintiffs, in excess of $1 million, related to special computer hardware sold by defendant with the system, along with certain services that were provided in connection with the parties' contract.

Plaintiffs did not present any evidence at trial that defendant's computer hardware was defective. Nor did plaintiffs present any evidence that services were not provided by defendant. But plaintiffs did present evidence, and notably this was never seriously challenged by defendant, that ultimately plaintiffs had to procure new specialized computer hardware from another vendor because defendant could never get its software to operate properly for plaintiffs. It is undisputed, and customary in the industry, that defendant's specialized hardware can't be used to run any other vendor's casino software.

The parties' contract provides that any damages "shall be limited to the total sum of the amounts actually paid by USER for any particular Bally Hardware or Software."[33] Defendant argues that because the foregoing limitation was "fairly and honestly negotiated, and understandingly entered into" and because its "language was clearly

---

[33] ECF doc. 9-1 at 15.

written in plain language, and there is no evidence that the limitation was hidden within the agreement," it should apply not only to a breach of contract claim but also to plaintiffs' claim for negligent misrepresentation.[34]

Defendant insists that the following facts justify limiting damages: plaintiffs were represented by counsel during the contract negotiations; plaintiffs made changes to the contract during negotiations; plaintiffs are sophisticated and experienced in business negotiations; and as such, it should be assumed that plaintiffs read the contract and understood its terms. Therefore, defendant argues, per the contract, plaintiffs' damages should be limited to the amount plaintiffs paid for the software: $281,135.00.

Plaintiffs respond that the damages limitation does not apply because they disaffirmed the contract by abandoning their contract-based claims in favor of their negligent misrepresentation claim. Therefore, plaintiffs seek to be restored to their status *before* the sale.

Plaintiffs also assert that the damages limitation does not apply because their negligent misrepresentation claim arises from a duty imposed by *law*, not by *contract*. Plaintiffs argue that their claim is not subject to the "strictures of contract" and that they should receive the full amount of damages allowed by tort law, which is not limited by the contract. Finally, plaintiffs contend that the plain language of the contract supports their argument. Because plaintiffs' negligent misrepresentation claim did not arise from

---

[34] ECF doc. 202 at 7.

defendant's performance under the contract, plaintiffs assert that it is not subject to the contract's limitation on damages.

Even if the court applied the contract's damages limitation, plaintiffs assert that this should have no effect on their damages. Mr. Stewart testified that it was defendant's negligent misrepresentations about the software that led plaintiffs to purchase the associated hardware.[35] Plaintiffs provided evidence that they never would have purchased defendant's hardware but for the misrepresentations about the software.[36] It was undisputed at trial that plaintiffs paid $1,582,475.00 for the hardware, software, and installation services. The jury awarded plaintiffs damages of $1,423,542.27. Because the jury's award of damages is within the limits set by the contract, plaintiffs assert that the judgment need not be disturbed.

In its reply, defendant merely cites Kansas cases where the parties were allowed to limit damages contractually, and cases outside of this district where the courts applied limitation-of-damages clauses to negligent misrepresentation claims. Defendant then re-asserts that plaintiffs were represented by counsel throughout the contract negotiations and that the district court previously applied that limitation-of-damages provision to its *breach of contact* claim in ruling on its motion for summary judgment.

---

[35] *See* ECF doc. 204-1 at 3-5.

[36] *Id.* at 6-7.

Significantly, however, Judge Vratil did not apply the limitation-of-damages provision to defendant's negligent misrepresentation claim. Upon defendant's motion for reconsideration of that ruling, she held "the legal authority which defendant cites in support of its claim falls short of suggesting that reconsideration is necessary to correct clear error or prevent manifest injustice."[37] This is now defendant's third attempt for the court to limit plaintiffs' damages on its negligent misrepresentation claim per the contract. Once again, the court is unpersuaded.

"[T]he misrepresentation claim stems from defendant's alleged negligence in conveying inaccurate information *before* plaintiffs entered the Agreement."[38] Consistent with Judge Vratil's previous rulings, this court finds that defendant has not shown the damages limitation in the contract limits the damages recoverable for plaintiffs' negligent misrepresentation claim. Therefore, defendant's renewed motion for judgment as a matter of law is denied. The jury's award of damages shall remain intact.

**II.    Defendant's Motion to Stay Execution of Judgment**

Under 62(b) of the Federal Rules of Civil Procedure, defendant moves to stay the execution of judgment until the court rules on its renewed motion for judgment as a matter of law. Rule 62(b) provides that "[o]n appropriate terms for the opposing party's security, the court may stay the execution of a judgment— or any proceedings to enforce

---

[37] ECF doc. 162 at 6.

[38] ECF doc. 152 at 17.

it— pending disposition of any of the following motions: (1) under Rule 50, for judgment as a matter of law." Because this order disposes of defendant's Rule 50 motion, defendant's motion to stay is denied as moot.

Defendant states that "[s]hould further appeals be needed, the issue of appropriate bond may be addressed at that time." However, the court cautions that it is disinclined to grant a stay of execution of the judgment pending appeal. Although the issue has not been fully briefed, defendant's reference to "Bally Technologies, Inc.'s" 10-Q for the quarter ending December 31, 2013, without more, is insufficient to show defendant is more than capable of paying the judgment, nor does it persuade the court to veer from the general rule requiring defendant to post a supersedeas bond in the amount required by D. Kan. R. 62.2.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Defendant's renewed motion for judgment as a matter of law (ECF doc. 201) is denied.

2. Defendant's motion for stay of execution of judgment (ECF doc. 199) is denied as moot.

Dated May 9, 2014, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge